From the facts in this case, it may be assumed that the several articles of property in question were delivered to and received by the defendant as a common carrier, to carry from New-York to the city of Albany, and there to deliver the same to F.M. Adams, and that there was no special contract between the parties, limiting the responsibility of the defendant as such common carrier. The rule is not disputed, that common carriers are responsible for every injury done to goods intrusted to them to carry, unless it proceeds from the act of God or the enemies of the land.
There is no evidence in this case to show how the fire, by which the property in question was destroyed, originated. The presumption, therefore, is that it arose from some act of man. (Angell on Carriers, § 156.) A loss arising from an accidental fire, or conflagration of a city, without any default whatever on the part of the carrier, it is well settled, furnishes no excuse for the carrier, for it does not fall within the exception. (2Kent's Com., 602; Story on Bailments, §§ 507, 511, 528;Hyde v. Trent Nav. Co., 5 T.R., 389; Gatliffe v.Bourne, 4 Bing. N.C., 314; Hollister v. Nowlen, 19Wend., 234.) There is no error, therefore, in the decision of the circuit judge, that the loss was not caused by the act of God within the rule referred to.
The defendant carried the goods up the river on board his barge Superior, to Albany, where they arrived early in the morning of the 18th of August, on which day they *Page 438 
were destroyed by fire. Previous to such destruction a portion of them were unloaded from the barge and put into a float in the Albany basin owned by the defendant; being a stationary floating craft, kept for the purpose of receiving goods brought up the river, with various apartments for the different transportation lines going west. It had been there several years, and it was the custom to discharge goods brought up the river into it, from which the goods were reshipped into canal boats to be taken to their destination on the canals; the canal boats coming alongside of the float, and receiving the goods immediately from the float. As to that portion, it was contended by the counsel for the defendant that the defendant was not liable as carrier; because, it was insisted, that it had ceased to be a carrier in respect to them, and had assumed the character of a storer or warehouseman before the loss; and that happening without any fault or neglect of the defendant, the defendant was not liable in that new capacity. This new relation is assumed to have taken place, on the ground that this portion of the goods was placed in store in a proper warehouse, consequent upon the neglect or refusal of Adams, the consignee, to receive them, after sufficient notice to him of the arrival of the goods, and their being ready for delivery to him. The general rule is, that a common carrier is bound, not only safely to carry, but safely to deliver, a parcel which he has undertaken to carry, at the place to which it is directed to the consignee personally. (Gibson v. Culver, 17Wend., 305; Ostrander v. Brown, 15 John., 42; Fisk v.Newton, 1 Denio, 46.) Personal delivery, however, is sometimes dispensed with, in the case of carriers by ships or boats. Notice given to the consignee of the arrival and place of deposit, comes in lieu of personal delivery. (2 Kent's Com.,
605.) So when goods are safely conveyed to the place of destination, and the consignee is dead, absent or refuses to receive, or is not known, and cannot, after due efforts are made, be found, the carrier may discharge himself from *Page 439 
further responsibility by placing the goods in store with some responsible third person in that business, at the place of delivery, for and on account of the owner. When so delivered, the storehouse keeper becomes the bailee and agent of the owner in respect to such goods.
In this case the goods were carried to Albany, but they were not delivered to Adams; he was neither dead nor absent; nor did he refuse to receive the goods; nor did the defendant place the goods in store with a responsible third person engaged in that business at the place of delivery, for and on account of the owner. In truth, the facts negative any such assumption. The most that the facts warrant us in saying, in respect to a delivery or storing, is that the defendant was engaged in transferring the goods from the barge to the float, preparatory to making a delivery from that craft to Adams, who had a boat ready to take the goods lying at the dock near the Boston ferry at the time. Indeed, there does not appear to have been any intention on the part of the defendant to change its relation to the goods, merely by the transfer to the float. In my opinion there is no good ground to say that it had changed its character of a common carrier to that of a warehouseman by that act. There was nothing to show an intention to do that, if such had been the intention. The facts and circumstances show conclusively that the defendant, instead of being engaged in storing the goods, was placing them in a situation to deliver them according to its contract. The goods had not been placed entirely in a condition to deliver when the accident happened. The defendant was at no time discharged of the responsibility which it had assumed as a common carrier.
The counsel on this argument has made a point, that the defendant had a right to go to the jury upon the question, whether a reasonable time for the consignee to take away the goods had not elapsed, if he had a boat ready. A short answer to that is, that no request or suggestion of that kind *Page 440 
was made on the trial, and it cannot be heard here for the first time.
The judgment should be affirmed.
All the judges concurring,
Judgment affirmed.